We move to the fourth case this morning, intercepted. Fourth case is United States v. Lundberg, and Ms. Cambino. Good morning, your honors. May it please the court and counsel. I am pleased to be here on behalf of Crystal Lundberg. We are presenting three issues before the court. The first is that the district court erroneously admitted three pieces of evidence into trial that prejudiced Ms. Lundberg in her defense. Secondly, that there was insufficient evidence at trial to support the convictions on counts two through six. And finally, that the district court erred in assessing a two-level increase in Ms. Lundberg's sentencing guidelines for based on the sophisticated means involved in the offense. So I will start by addressing the evidentiary issues before the court. First and foremost, Ms. Lundberg's prior profession as an escort was allowed to come into evidence, and this was an error, and it was an error for several reasons. First of all, it wasn't material to any disputed issue at trial. The crux of this case relied on determining whether or not Ms. Lundberg did what she did with criminal intent or the intent to defraud. And the fact of her previous employment had nothing to do with making that determination. So under cases, for instance, such as the United States versus Cox and this court's case, McGee, her prior involvement in the escort business was not material. And secondly, it was highly prejudicial. Who else mentioned escort? Wasn't that term used in some other part of the argument? Your Honor, the defense made one sort of oblique reference to it in cross-examining Mr. Kennedy, but this issue was raised predominantly by the government. It was raised at least seven times. And those occasions appear in volume two of the trial transcripts at 155 to 156, 159, 160, 206, and in the closing argument, volume four, page 728. And most importantly, in that closing argument, the government put forward a theory of the case according to which Ms. Lundberg did this because she was an escort. And this was as they characterized it, the card was her ticket out of that lifestyle. Now, there wasn't evidence sufficient to- Would you speak to the question of waiver on this issue? Yes, Your Honor, of course. With respect to this particular piece of evidence, the issue is not waiver, but rather forfeiture. And so this court would review it under the plain error standard because Ms. Lundberg's trial attorney did not object to the admission of this evidence at trial, but she did not waive her right to have it presented. All right. Now, the prejudice of this is clear. If you look at cases like Courtney versus the United States in the Ninth Circuit, where the court found that the introduction of an undercover witness's wife's engaging in prostitution was irrelevant and also prejudicial because of societal attitudes and potentially juror attitudes toward involvement in this kind of conduct. And the same thing here. I think that there isn't a propensity-free chain of reasoning as this court requires that would allow that evidence in, as the government asserts in retrospect, as evidence of motive. And the reason why that argument doesn't work is that you have to speculate about too many issues and make too many speculative decisions before you arrive at being an escort as motive. First of all- So does that have something to do with her propensity to help run up $6 million in spending a lot of stuff? Right. Just because maybe at one time she was an escort. Right. In other words, her propensity to engage in this kind of fraud activity was more likely than not because she had engaged in the escort activity previously. And there isn't any other way to look at introducing that particular piece of evidence in a trial because it doesn't go to motive in any way, shape or form. You would have to speculate about whether or not she chose to be an escort, how much money she made as an escort, whether the money she made as an escort was substantially different from what the gifts were that were provided to her by Mr. Kennedy. There are just too many speculative issues that you would have to make conclusions about before you could say that this constituted evidence of motive. And there was no evidence introduced at trial to support those. So for instance, this court in Kuznick allowed the admission of economic evidence, bankruptcy proceedings, credit card debts, and loss of job and things like that on the issue of motive. But the government in that case had evidence to back up that information. In this case, with respect to Ms. Lundberg, there was no evidence to back up any finding that this was a motive for her to engage in fraud. And this court has said many times that the evidence of other crimes that are not related to the one issue are precisely the sort of thing that 404B is designed to keep out because we don't want the jury making a decision based on a bias or prejudice they may have against someone who engages in a particular profession rather than on the evidence at trial, which is whether the person engaged in fraud or intended to defraud through their conduct. The second evidentiary issue for Ms. Lundberg is the opening of other credit card accounts in Scott Kennedy's name.  to any relevant issue at trial. This involved the opening of three fairly small credit card accounts valuing 500, 300 and $3,000. There was no evidence presented at trial that these accounts were maxed out, defaulted or any other thing. The reason put forward for introducing this was as evidence that Ms. Lundberg knew that they were living beyond their means. While that is insufficient, credit cards are not necessarily an indicator that one is living beyond their means. People open credit card accounts for all kinds of reasons from wanting to establish credit on their own to making purchases without cash to doing all kinds of other things other than being a reflection of knowledge about a person's economic status. Did you object to that evidence at trial? The trial counsel did not object to this evidence either. So again, it would be reviewed under the plain air standard. And the last piece of evidence in this category may be the most egregious and that was a government's exhibit 58, which was a text message that Scott Kennedy sent to himself. There was no evidence presented at trial that he sent that text to Ms. Lundberg, that she read it, that she understood it or that they had any kind of discussion about it. This piece of evidence is in a different category than the other two. The trial counsel actually stipulated to the admission of this evidence. Ordinarily, this court has found that in cases where the trial counsel stipulates, you don't review it at all and you consider it waived. However, in this particular case, because trial counsel did not object to the admission of the evidence because trial counsel didn't file post-trial motions and because the nature of the error is so egregious, I would ask the court to look at this under the same plain error review as the other two pieces of evidence. What do you label that? Is it an admission? Is that what the problem with that, putting that into any kind of evidence? When he described the transaction- The problem with that- Yeah, go ahead. The problem with that piece of evidence, Your Honor, is that it didn't have anything to do with Ms. Lundberg. There was never any proof that she sent it. In that piece of evidence, Kennedy sort of confessed to himself about all the bad things that he had done and why he had done them, and that he had done this out of some love or desire to please Ms. Lundberg. But it was not relevant to Ms. Lundberg's understanding of what was going on or Ms. Lundberg's participation in what he was doing and knowing what he was doing. So- Well, was she pleading ignorance? Like she didn't know where all this came from, but isn't it nice, diamonds and things? Well, she knew where it came from because he allowed her to use the credit card. The question is whether she knew that it was illegal for him to be doing that. And I believe the contention at trial or the way the defense came in at trial was that his actions and his words were contradictory. And that while he, as soon as it looked like he was gonna get caught, started writing these emails to himself and sending other emails or text messages to her, that even though he's telling her that they don't have enough money to afford what he's giving her, what he's letting her do, he turns right around and continues to let her do it. She didn't send a text message to him then? The one that says, oh my God, please delete the email? That was with respect to a different email. The email, the testimony at trial was that the Exhibit 58 was never sent, but that he sent something similar to her. What he sent that was similar to her wasn't entered into evidence because it had been deleted and not recovered. So the text message that says, oh my God, or OMG, please delete that email, admitting you're committing fraud, delete that, you are fucking crazy, that didn't come into evidence? That text message came into evidence, but what that text message was specifically referring to did not come into evidence. And that text message also, I should point out, refers to him committing fraud, not to her committing fraud, or not to her being a part of the fraud that he is committing. Where is she now? Right now she is in custody at the Metropolitan Correctional Center, awaiting designation to her, facility. So what's the term? What's the length of the term if there is one? Yes, she was sentenced to 53 months imprisonment in the custody of the Bureau of Prisons. And so she is actually serving that term at the moment. Okay. The second issue that I'd like to discuss with your honors is the sentencing issue, sophisticated means. And I believe it's our position that the judge aired in finding that Ms. Lundberg's conduct represented sophisticated means. It may be true that with respect to the fraud on Namera, the conduct of Mr. Kennedy certainly could be termed as sophisticated based on his knowledge of the financial system of Namera, his setting up of the credit card so that only he was responsible for it, and his ability to hide the fund and spending within the Namera accounts. Ms. Lundberg, on the other hand, was not involved. What she did was not at all sophisticated. Basically what she did was use a credit card that was given to her by Mr. Kennedy to spend money. And she did it in her own name, she did it with his authorization, and she didn't do anything at all sophisticated. What the judge relied on at sentencing was the involvement in lying to a lease lessor to get an apartment, to get the house. And while he helped her produce a fraudulent document to do that, that was not related to either planning the fraud on Namera or concealing it. And I see that my time is- Is that some kind of a rental? Was that something- Pardon me? Mansion or whatever it was, I guess in California, but whatever, was that some kind of a rental arrangement? It wasn't a purchase, was it? No, it wasn't a purchase, it was a rental property. And she submitted some false information about income in order to get the property, but the connection between the payment for the property and Namera was clear. So this wasn't- She didn't show that she honored the W-2s, though, didn't she? Well, I believe that Mr. Kennedy provided those to her, and it was not clear from the testimony at trial whether she altered them or he did. They were altered, though, no question about that. To show that she was what? That she was earning more money than she was. But while this might've been a fraud on the lessor, it wasn't a part of the scheme to defraud Namera because there was no- This wasn't part of concealing the money that was paid to the lessor because it came directly from the Namera credit card, and everyone knew that. And it also wasn't a part of the defrauding of Namera in terms of executing it. I see my time is up. Unless you have other questions, I will conclude and ask that this case be reversed and remanded to the district court. Thank you, Ms. Kim. Mr. Peabody. May I please the court, Tom Peabody for the government. I'll start with the references to S-court, which the defendant seeks to reverse under Rule 404B. Defendant's work as an S-court and the evidence of her desire to leave that profession was propensity-free evidence of motive under Rule 404B. The district court did not plainly err in admitting it. That link between her motive and her previous background is not speculative. Based on the evidence, the defendant herself made clear the link. Kennedy, for example, testified on cross-examination that when their romantic relationship began and just before their increase in spending started, he knew that defendant was, quote, looking to get out of her previous background. That's trial transcript page 394. Even more clearly, after the scheme was discovered, defendant texted Kennedy that because they had been cut off from the card, she, quote, was going to have to start selling herself again That's trial transcript page 354. This evidence does not require speculation to arrive at motive. Very clearly, she needed Numeris card to, quote, get out of S-court. And that's exactly how the government used the evidence in its closing. It very briefly argued that the defendant had a specific motive to use the card to create a, quote, new life. With respect to the Rule 403 balancing, for the same reason that there's waiver, there was no unfair prejudice. The defendant herself elicited the fact that she was in S-court during Kennedy's cross-examination. And she made reference to her background at closing as well. There can hardly be unfair prejudice under these circumstances. Just a couple other points on waiver with respect to the S-court. In her reply, the defendant argues that there was only one passing reference to her background on cross-examination. I don't think that's quite right. First, there was an explicit reference to it in the discussion about the couple's background, which involves several questions about her previous S-courting. Then about 12 pages later, seemingly in questioning Kennedy's credibility, there were several references to the fact that he knew what her job was at the time. Now, it's true, as my colleague on the other side points out, that in that line of questioning, the word S-court specifically was not used. But trial counsel for the defense had made reference to it just a few pages previously. And then again, he used it during closing argument. Also in the reply, the defense argues that the record suggests that the defendant just missed the opportunity to object to this evidence. I don't think that's quite right either. If you look at docket entry 77, that's the defendant's proposed voir dire in this case. And at least five questions about the defendant's prostitution, the commercial sex industry, and sex for money come up. This suggests the defendant clearly anticipated that the evidence would come in. I don't think the record reflects that she just missed the opportunity. As to the credit lines, the district court did not plainly err in introducing evidence of these small credit lines that the defendant doped in Kennedy's name. The evidence was relevant to her knowledge of the fraud. The fact that she maxed out smaller lines of credit    smaller lines of credit very clearly put her on notice that she was not aware of the fraud. In fact, Kennedy's testimony was that defendant doped in these accounts because she thought they, to quote Kennedy's paraphrasing of the defendant, needed more availability to spend after he had set a budget for her on the existing personal credit card and after their other credit cards had been maxed out. Again, this does not require speculation.  were not the only evidence that the defendant which exceeded the budget that Kennedy had spent at a time when the credit cards were being maxed out were all indicative of defendant's knowledge that Kennedy couldn't legitimately support her. When you refer to a budget, was there some limit on her on the budget that referred to her? That's right, your honor. On pages 181 through 185 of the trial transcript, Kennedy explains that they were having serious financial problems, that he put her on his personal, not the corporate, but his personal Amex account, but that she had been subject to a $1,500 budget on that account. Following that- $1,500 for what period of time? Excuse me, your honor. Was it monthly or annually or what? I believe it was monthly. There's also, based on this, your honor, no probability of a different outcome. The evidence against the defendant was substantial. The jury heard, among other things, that Kennedy told the defendants the card was for company use only, the nature and the volume of the spending. The two went on to spend $5.8 million in 16 months, including on jewelry, plastic surgery, and vacations for the defendants. The jury heard that Kennedy texted defendants that he had run out of hiding spots in the financials. Kennedy also told her in emails that he had crossed his moral and ethical line and risked jail by allowing her to spend on the credit card. All of this was more than sufficient for the jury to convict. On Exhibit 58, which is an email that was authored in the fall of 2016, as an initial matter, the defendant stipulated to this email's admission, and under very clear circuit law, that amounts to waiver. But even setting aside waiver, the exhibit was properly admitted. It was clearly relevant. This was a co-schemer's confession of wrongdoing, and it goes directly to the defendant's state of mind. It's true that the jury was not able to see the email that was actually sent to the defendant, but there's no question that she reviewed an email that referenced fraud. Kennedy testified that the email he ultimately sent defendant was substantially similar, and he explicitly made clear that it referenced fraud. And also, we have Exhibit 62, in which the defense, as Judge Kaney pointed out, the defendant, excuse me, as Judge Kaney pointed out, responded to Kennedy's suggestion of fraud in the email. The jury heard the shortcomings about that email. It was for them to give it the weight it deserved. And lastly, on the sophisticated means enhancement, the district court did not clearly err in finding that defendant's fraud, namely the manipulation of financial documents to support a lease application for a mansion, was more sophisticated than the average credit card fraud. One point of clarification, that I don't think the record leaves any ambiguity about who manipulated these financial documents. The testimony was that Kennedy, from Illinois, emailed the defendant his W-2s and his pay stubs. Then, upon a search warrant executed in the California home, the physically manipulated documents were recovered. I think maybe the only reasonable inference, but one that the jury certainly could have drawn, is that the defendant herself was the one who manipulated the documents. And as described by the agent at trial on trial transcript pages 669 through 679, the defendant misled Kennedy into providing her the W-2s, suggesting that her father had requested them so that she could be sure that he could provide for her. She then physically altered the documents to secure a mansion's lease, to make it appear as though she had sufficient income to pay for the home. Contrary to the defendant's argument, I think that was clearly a part of the scheme. Without the verifiable income, she couldn't have completed the application. And without that application, she couldn't have gone on to spend more than $100,000 of Numera's money on the mansion. Mr. Peabody, could I take you back to the initial concern of Ms. Gambino about the escort service? Is it the government's position that your use of her background for purposes of motive is no different than if she was living in poverty and wished to get out of poverty, and that's why she participated with Mr. Kennedy? Is that how we should equate this? Your Honor, I initially would respond that poverty is not subject to the Rule 404B analysis. It's not criminal activity, and thus an other act under Rule 404B. I think in the appropriate case, like in United States v. Farrell, in which there is trial record evidence suggesting that the defendant's financial circumstances were tied directly to the reason that he or she committed a fraud. Again, if you're operating under the Rule 404B analysis, it is appropriate to consider. Again, as this Court made clear in Farrell, defendant's personal debts. Again, when trial evidence suggests that those debts were the reason for the fraud can be appropriate for Rule 404B analysis. So your position would be if she was a minor drug dealer in perhaps dealing with marijuana in areas where that remains a criminal issue, that could also be brought forward as she wants to lead the life of a drug dealer? Your Honor, again, it would depend a bit on the case. I do wanna make clear that our argument and our position is not that a generalized desire to make money suffices under Rule 404B. It's not. But when there is evidence, including from a cooperating co-defendant who's testifying as to things he was specifically told by the defendant about why this fraud mattered to her, why it was so important, it could be appropriate. And we think that's the case here. If there are no further questions, the government respectfully asks that this Court affirm the defendant's conviction and sentence. Thank you, Mr. Peabody. Thanks, Ms. Camino. I think your time has expired, had it not? It had, Your Honor. Thanks to both counsel. The case will be taken under advisement.